**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| DAIMLER TRUST AND DAIMLER TITLE CO., Plaintiff, v. THE COUNTY OF BERGEN, AND BERGEN BROOKSIDE TOWING, Defendants. | (Electronically Filed) Civil Case No.: **COMPLAINT** |
|---|---|

Plaintiff, Daimler Trust ("Daimler Trust") and Daimler Title Co. ("Daimler Title," and together, "Plaintiffs"), as and for its Complaint against Defendants, The County of Bergen ("Bergen") and Bergen Brookside Towing ("Brookside"), alleges:

**NATURE OF ACTION**

1. Bergen regularly seizes vehicles as part of its law enforcement activity but has no procedure for disposing of seized vehicles consistent with the basic due process requirements of notice and a hearing. Instead, Bergen employs the outdated and constitutionally unsound practice of summarily turning over control of seized vehicles to the private towing company that towed the vehicle when Bergen seized it. In this regard, Bergen's policy is to enlist a towing garage to tow and store vehicles and allow those garages to lien and/or sell the vehicle as a means to cover the costs of towing and storage.

2. Bergen's policy and practice of summarily turning over seized vehicles to private tow companies is a joint enterprise from which Bergen benefits by avoiding the cost of preserving the seized vehicles and by avoiding the cost of having to pay for towing services, because the tow company accepts the vehicle as compensation for the services it renders to Bergen in lieu of money. The tow company benefits by using its control over the vehicle (created

under mantle of authority from Bergen) to profit by selling the vehicle or by conditioning release of the vehicle upon payment of money to the tow company.

3. Here, after seizing a vehicle owned by Daimler Trust, and on which Daimler Title holds a lien, Bergen afforded no due process to Plaintiffs and instead summarily disposed of its interests in that vehicle by giving it to Brookside as payment for the services that Bergen had contracted Brookside to provide. Brookside accepted the vehicle from Bergen as compensation, asserted an *ex parte* lien for those services, demanded that Plaintiffs satisfy that *ex parte* lien—which Brookside insisted took priority over Daimler Title's lien—before it would relinquish possession of Plaintiffs' vehicle. At no time were Plaintiffs afforded notice, a hearing, or just compensation for Bergen's taking of Plaintiffs' vehicle.

**JURISDICTION AND VENUE**

4. This is a declaratory judgment/civil rights action pursuant to 42 U.S.C. §§ 1983 and 1988 for deprivation of Plaintiffs' rights secured by the Fourth, Fifth and the Fourteenth Amendments to the United States Constitution, and accordingly jurisdiction is conferred on this Court by 28 U.S.C. §§ 1343(a)(3) and 1343(a)(4), as well as 28 U.S.C. § 1331.

5. The remaining causes of action are appropriate pursuant to 28 U.S.C. § 1367 for interrelated state law claims that arise from the occurrences giving rise to the Federal claims, which have a common nucleus of operative fact.

6. Venue lies in the Court pursuant to 28 U.S.C. § 1391, because the Defendants reside in this district, and 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

7. Daimler Trust is a Delaware business trust, in the business of taking assignments of vehicle lease contracts and holding the associated ownership interests in vehicles, including the vehicle which is the subject of this action, a 2015 Mercedes-Benz, VIN #: WDCYC7DF7FX233949 (the "Vehicle"). Daimler Title is a Delaware corporation and the holder of the duly recorded lien on the title to the Vehicle.

8. Defendant Bergen is a municipal entity organized and existing under the laws of the State of New Jersey.

9. Defendant Brookside is, upon information and belief, a corporation incorporated in the State of New Jersey which is engaged in the business of towing and storing motor vehicles.

## FACTS

**Plaintiffs' interest in the Vehicle**

10. Daimler Trust is the titled owner of the Vehicle and Daimler Title holds a recorded lien in the Vehicle.

11. Before September 18, 2021, and before any other facts relevant to this action, non-party Lorel Heating Services Inc. (the "Customer") entered into a vehicle lease contract to lease the Vehicle, which lease was assigned to Daimler Trust. By virtue of that transaction, Daimler Trust obtained ownership of the Vehicle and Daimler Title obtained a lien on the Vehicle.

12. Before, on, and after September 18, 2021, Plaintiffs held and continues to hold ownership and lien interests in the Vehicle, which have been duly recorded on the title to the Vehicle.

13. Before September 18, 2021, the Customer defaulted on the payment obligations under the lease contract, thereafter entitling Plaintiffs to immediate possession of the Vehicle.

14. By virtue of Bergen's seizure of the Vehicle, and by virtue of amounts Brookside claimed by way of possessory lien on the Vehicle, the Customer was also and further in non-monetary default of the terms of the lease contract, thereafter, also further entitling Plaintiffs to immediate possession of the Vehicle.

**Bergen seized the Vehicle, in which Plaintiffs held a protected interest, and gave it to Brookside for disposal**

15. On or about September 18, 2021, Brookside actively and regularly towed and stored vehicles at the direction of Bergen police officers acting in the regular course of their duties as law enforcement officers.

16. On or about September 18, 2021, Bergen took custody of the Vehicle and instructed Brookside to tow it from the roadway and store it at Bergen's direction.

17. Brookside's custody of the Vehicle was due to law enforcement tow.

18. Plaintiffs had no involvement with or knowledge of the operation of the Vehicle at the time it was seized by Bergen Police and/or Brookside.

19. On or about April 11, 2022, Brookside sent Plaintiffs an "Abandoned Vehicle on Private Property-90 Day Notice" stating that the Vehicle had been "deemed abandoned" since September 18, 2021.

20. This April 11, 2022 letter was the first communication from either Brookside or Bergen informing Plaintiffs that the vehicle had been seized months earlier.

21. After receiving the April 11, 2022 notification, Plaintiffs demanded that the Vehicle be released to it, and Brookside refused unless Plaintiffs paid the fees demanded by Brookside in order to recover the Vehicle.

22. Brookside related that the Vehicle would be deemed to be abandoned unless Plaintiffs complied with Brookside's demands.

23. Brookside asserted that it was able to detain the Vehicle from Plaintiffs because Brookside claimed a lien on the Vehicle for towing and storage charges. Brookside asserted that as of June 28, 2022 its alleged lien secured charges in the amount of $10,748.53.

24. There is no law which requires Plaintiffs to pay Brookside's towing and storage bill for Bergen's alleged services.

25. To the extent Bergen or Brookside seek to rely on any New Jersey State law to justify their conduct, these laws are inapplicable, or, if deemed applicable, unconstitutional as applied to the circumstances.

26. Plaintiffs did not pay the fees demanded by Brookside, and Brookside refused to release the Vehicle to Plaintiffs.

27. Bergen benefited from Brookside's detention of the Vehicle to secure payment, in that Bergen obtained Brookside's impound storage services, as well as Brookside's towing services to clear the roadway, with no payment (or reduced payment) of money from Bergen to Brookside.

28. Brookside only possessed the Vehicle by virtue of its relationship with Bergen and acted in concert with Bergen to seize, detain and dispose of the Vehicle. Brookside had no other right to remove the Vehicle from the roadway and hold it against anyone. Brookside, therefore, acted under color of law when it towed, stored and/or disposed of the Vehicle.

**Bergen's and Brookside's regular policies, customs and/or practices which were applied to the Vehicle**

29. Bergen and Brookside's conduct in relation to Plaintiffs and the Vehicle on and after September 18, 2021, comported with both Bergen's and Brookside's regular policies,

customs and/or practices for the handling of Vehicles encountered and impounded under the same or similar circumstances.

30. Bergen carries out its essential functions through its own police and/or sheriffs, who, among other things, seize vehicles for a variety of reasons ranging from alleged criminal infractions to parking violations.

31. Bergen delegates a portion of the performance of its essential functions to Brookside. Specifically, Bergen police utilize Brookside to tow away, store and dispose of vehicles seized by Bergen police acting in the course of their duties as law enforcement officers. In essence, Brookside is Bergen's vehicle impound provider for the area relevant to this action.

32. Pursuant to this relationship, Bergen exercises governmental authority to seize vehicles in concert with Brookside.

33. Regardless of the reason for Bergen's initial seizure of a given vehicle, Bergen does not return those vehicles to a person with a preexisting property interest when the justification for Bergen's seizure has passed. Instead, Bergen places seized vehicles in the possession of its tow operators, including Brookside, for storage and ultimate disposal, permitting the assertion of an *ex parte* possessory lien to secure payment of charges relating to the towing, storage, and disposal.

34. Brookside (and the other tow operators) accept the seized vehicles from Bergen—which vehicles Bergen does not own—as either partial or total payment for the towing and storage services Brookside provides to Bergen.

35. Rather than receiving monetary compensation from Bergen for the services Bergen has contracted Brookside to provide, Brookside instead impresses an *ex parte* possessory

lien for towing and storage fees, which it claims supersedes any other persons' rights in these vehicles.

36. After assessing an *ex parte* possessory lien on impounded vehicles, Brookside refuses to return possession of the vehicles to any other person, even those with pre-existing property rights in the vehicles, while claiming additional daily storages charges.

37. To effectuate eventual disposal of an impounded vehicle, Brookside transmits inapplicable abandonment paperwork to those with preexisting property interests that are the same or similar to the one Bergen transmitted to Plaintiffs.

38. To effectuate eventual disposal of an impounded vehicle, Bergen insists persons with preexisting property interests satisfy Brookside's *ex parte* possessory lien, and further asserts that if this unilateral condition is not satisfied, Bergen can take title to the impounded vehicles and eliminate all other persons' interest in those vehicles.

39. Bergen benefits from Brookside's assertion of an *ex parte* lien on, and eventual sale of, seized vehicles. Without Brookside's conduct, Bergen would be forced to pay monetary consideration to Brookside for the services Brookside provides Bergen instead of compensating Brookside with possession and authority to assert a lien on the impounded vehicles. Moreover, upon information and belief, Brookside pays a portion of the proceeds it obtains from others back to Bergen as part of its agreement(s) with Bergen.

40. It is Bergen's and Brookside's regular policy and custom, in the course of the above-described conduct, to not obtain a warrant for any of the following actions (for which no valid exception to the warrant requirement exists):

A. The initial seizure of the vehicle;

B. The turnover of possession of the vehicle to Brookside;

C. The decision by Bergen and/or Brookside to continue to detain the vehicles after the initial reason for the seizure has passed;

D. The decision of Brookside to assert an *ex parte* possessory lien and the amount of that lien;

E. Brookside acting to acquire ownership by terminating all property interests in the vehicle; and

F. The eventual sale of the vehicle.

41. Even if the initial seizure of the vehicles in question were made under a valid exception to the Fourth Amendment's warrant requirement, a (possibly) valid initial warrantless seizure does not justify any action Bergen or Brookside decide to take thereafter, as referenced in ¶ 40 (B-F) supra.

42. Rather, Bergen and Brookside are required to obtain a warrant, or new justification for a warrantless seizure once the reasons for the (possibly valid) initial warrantless seizure have dissipated. Alternatively, the subsequent actions rendered the seizure unreasonable in its manner of execution, even if done with an initially valid exception to the warrant requirement.

43. It is also Bergen's and Brookside's regular policy and custom, in the course of the above-described conduct, to not provide any form of constitutionally adequate notice, nor any hearing whatsoever, in relation to any of the following actions:

A. The initial seizure of the vehicle;

B. The turnover of possession of the Vehicle to Brookside;

C. The decision by Bergen and/or Brookside to continue to detain the vehicles after the initial reason for the seizure has passed;

D. The decision of Brookside to assert an *ex parte* possessory lien and the amount of that lien;

E. Brookside acting to acquire ownership by terminating all property interests in the vehicle; and

F. The eventual sale of the vehicle.

44. Any notification(s) transmitted by Bergen and/or Brookside relating to the conduct referenced in ¶ 43 (A)-(F) does not satisfy the constitutional due process requirement of notice, because these communications are notifications of Bergen's and/or Brookside's unilateral demands, not notice of an opportunity to be heard (which does not occur).

45. These actions, all taken in accordance with Bergen's and Brookside's regular policies and customs for seizing and disposing of seized motor vehicles, violate the Fourth, Fifth and Fourteenth Amendment to the United States Constitution.

46. Bergen and Brookside knew or should have known that their actions violated the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

**COUNT I**
**Violation of Civil Rights Pursuant to title 42 U.S.C. § 1983**
**(Deprivation of Property by Unreasonable Seizure)**

47. Plaintiffs reallege and incorporate herein by reference the allegations set forth in the prior paragraphs herein.

48. Plaintiffs are the holders of protected property interests in the Vehicle.

49. Defendants meaningfully interfered with Plaintiffs' protected interests in the Vehicle by towing it, detaining it, withholding possession from Plaintiffs, demanding payment and other conditions for release of it, and threatening to ultimately take ownership of it free from Plaintiffs' ownership and lien (respectively).

50. By these actions, Defendants acted under color of law to seize the Vehicle within the meaning of the Fourth Amendment to the United States' Constitution.

51. Defendants' seizure of the Vehicle was unaccompanied by a warrant.

52. Defendants' seizure of the Vehicle was unaccompanied by any legitimate exception to the warrant requirement. Alternatively, to the extent the initial seizure was accompanied by any arguably legitimate exception to the warrant requirement, it was carried out in an unreasonable manner of execution insofar as the seizure exceeded the scope necessary to complete any legitimate task associated with the purported warrant exception for which the vehicle was seized.

53. Defendants' seizure of the Vehicle was therefore unreasonable in violation of the Fourth Amendment to the United States' Constitution.

54. Defendants' unreasonable seizure of the Vehicle was accomplished in accordance with the Defendants' standard policy and/or custom for the handling and disposal of seized vehicles.

55. As a direct and proximate result of Bergen's and Brookside's violation of Plaintiffs' Constitutional right to be free from unreasonable seizures, Plaintiffs has suffered damages based upon the lost value of the Vehicle, loss of use of the Vehicle, the lost revenue stream from the Vehicle, and other damages.

56. Plaintiffs is, therefore, entitled to relief under 42 U.S.C. § 1983.

**WHEREFORE,** Plaintiffs pray for judgment against Defendants Bergen and Brookside, jointly and severally, for immediate possession of the Vehicle, actual damages, consequential damages, punitive damages (as to Brookside only), statutory damages, fees and costs of suit, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, and such other and further relief as the Court deems just and proper.

**COUNT II**
**Violation of Civil Rights Pursuant to title 42 U.S.C. § 1983**
**(Deprivation of Property Without Due Process of Law)**

57. Plaintiffs reallege and incorporate herein by reference the allegations set forth in the prior paragraphs herein.

58. Plaintiffs are the holders of protected property interests in the Vehicle.

59. Bergen and/or Brookside's actions resulted in the deprivation of Plaintiffs' protected property interests in the Vehicle.

60. Neither Bergen nor Brookside had any mechanism for, nor did either secure, review of any of either Defendants' actions in relation to the Vehicle before a judge or other neutral decisionmaker.

61. Neither Bergen nor Brookside provided Plaintiffs for an opportunity to be heard in relation to any of either Defendants' actions in relation to the Vehicle in any venue at any time.

62. Because neither Bergen nor Brookside provided any mechanism for, nor did either secure, review of any of either Defendants' actions in relation to the Vehicle by a judge or other neutral decisionmaker, neither provided Plaintiffs with constitutionally adequate notice of that non-existent hearing procedure.

63. The manner in which Plaintiffs became aware of Bergen and Brookside's seizure of the Vehicle, as well as Brookside's continued possession of the Vehicle, did not constitute adequate notice for the purposes of due process.

64. Defendants' deprivation of Plaintiffs' rights in the Vehicle was therefore accomplished without due process of law in violation of the Fifth and Fourteenth Amendment to the United States Constitution

65. Defendants' deprivations of Plaintiffs' rights in the Vehicle were accomplished in accordance with the Defendants' standard policy and/or custom for the handling and disposal of seized vehicles.

66. As a direct and proximate result of Bergen's and Brookside's violation of Plaintiffs' Constitutional right to be free from deprivations without due process of law, Plaintiffs have suffered damages based upon the lost value of the Vehicle, loss of use of the Vehicle, the lost revenue stream from its finance of the Vehicle, and other damages.

67. Plaintiffs is, therefore, entitled to relief under 42 U.S.C. § 1983.

**WHEREFORE,** Plaintiffs pray for judgment against Defendants Bergen and Brookside, jointly and severally, for immediate possession of the Vehicle, actual damages, consequential damages, punitive damages (as to Brookside only), statutory damages, fees and costs of suit, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, and such other and further relief as the Court deems just and proper.

**COUNT III**
**Violation of Civil Rights Pursuant to title 42 U.S.C. § 1983**
**(Taking of Property Without Just Compensation)**
**(as against Bergen)**

68. Plaintiffs reallege and incorporate herein by reference the allegations set forth in the prior paragraphs herein.

69. Plaintiffs are the holders of protected property interests in the Vehicle.

70. Bergen compensated Brookside, in whole or in part, by turning over possession of the Vehicle to Brookside, who lawfully possessed the Vehicle only by virtue of having obtained it from Bergen.

71. Brookside accepted the Vehicle as compensation, in whole or in part, for the services it provided to Bergen, namely the towing and storage of the Vehicle that Bergen had seized.

72. Bergen destroyed Daimler Title's lien priority in the Vehicle, threatened to take Daimler Trust's title in the Vehicle, and interfered with both Plaintiffs' possessory rights pursuant to the Lease with its Customer, by turning over the Vehicle to Brookside and permitting Brookside to assert a possessory lien, allegedly took priority over Daimler Title's lien and prevented both Plaintiffs from exercising its possessory rights in the Vehicle.

73. Bergen thereby took Plaintiffs' interests in the Vehicle—their right to possession of the Vehicle and Daimler Title's lien priority in the Vehicle—for a public use.

74. Bergen did not compensate Plaintiffs for the taking of their interests in the Vehicle.

75. Bergen therefore took Plaintiffs' property for public use without just compensation in violation of the takings clause of the Fifth Amendment to the United States' Constitution.

76. Bergen's taking of Plaintiffs' rights in the Vehicle was accomplished in accordance with Bergen's standard policy and/or custom for the handling and disposal of seized vehicles.

77. As a direct and proximate result of Bergen's violation of Plaintiffs' Constitutional right to be free from takings without just compensation, Plaintiffs has suffered damages based upon the lost value of the Vehicle, loss of use of the Vehicle, the lost revenue stream from its finance of the Vehicle, and other damages.

78. Plaintiffs is, therefore, entitled to relief under 42 U.S.C. § 1983

**WHEREFORE,** Plaintiffs pray for judgment against Defendants Bergen and Brookside, jointly and severally, for immediate possession of the Vehicle, actual damages, consequential damages, punitive damages (as to Brookside only), statutory damages, fees and costs of suit, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, and such other and further relief as the Court deems just and proper.

**COUNT IV**
**Violation of New Jersey Constitution**

79. Plaintiffs reallege and incorporate herein by reference to the allegations set forth in the prior paragraphs herein.

80. Bergen and Brookside's actions also violate the corresponding protection of the New Jersey State Constitution as set forth above.

**WHEREFORE,** Plaintiffs pray for judgment against Defendants Bergen and Brookside, jointly and severally, for immediate possession of the Vehicle, actual damages, consequential damages, punitive damages (as to Brookside only), statutory damages, fees and costs of suit, and such other and further relief as the Court deems just and proper.

**COUNT V**
**Declaratory Relief**

81. Plaintiffs reallege and incorporate herein by reference to the allegations set forth in the prior paragraphs herein.

82. An actual controversy has arisen and now exists between Plaintiffs and Defendants warranting declaratory relief pursuant to 28 U.S.C. 2201.

83. Plaintiffs contend Defendants' conduct is unconstitutional.

84. Defendants assert that their conduct is constitutional.

85. Brookside also asserts a possessory lien in the Vehicle which it claims takes priority over Plaintiffs' ownership interests and prior perfected lien, which Plaintiffs disputes.

86. The parties will not resolve their disagreements over their respective rights in seized vehicles without a judicial declaration.

87. A judicial declaration will also serve the public interest, insofar as Bergen seizes hundreds of cars every year under the same or similar circumstances to the Vehicle, which it subjects to the same policies and customs that Plaintiffs contend violate the United States and New Jersey Constitutions, including many others in which Plaintiffs hold liens.

88. Plaintiffs seeks a declaration that, to the extent Defendants seek to rely on any provisions of state or local law to justify the above-described actions, those laws are unconstitutional as applied in violation of the Supremacy Clause and the aforementioned Constitutional rights.

**WHEREFORE,** Plaintiffs pray for an appropriate judicial declaration of the Parties' respective rights, and such other and further relief as the Court deems just and proper.

## COUNT VI
**Replevin**
**(as against Brookside only)**

89. Plaintiffs reallege and incorporate herein by reference to the allegations set forth in the prior paragraphs herein.

90. Plaintiffs hold a valid lien in the Vehicle and are entitled to possession pursuant to its retail installment contract with the Customer.

91. Plaintiffs have demanded that Brookside surrender the Vehicle to Plaintiffs' possession.

92. Brookside has refused, and continues to refuse, to surrender the Vehicle to Plaintiffs' possession.

93. Plaintiffs are entitled to an order requiring Brookside to immediately turn over possession of the Vehicle to Plaintiffs.

**WHEREFORE**, Plaintiffs pray for judgment against Defendant Brookside for immediate possession of the Vehicle, actual damages, consequential damages, punitive damages, fees and costs of suit, including reasonable attorneys' fees, and such other and further relief as the Court deems just and proper.

**COUNT VII**
**Conversion**
**(as Against Brookside only)**

94. Plaintiffs reallege and incorporate herein by reference to the allegations set forth in the prior paragraphs herein.

95. Plaintiffs have a lien in the Vehicle, and in accordance with its rights under their retail installment contract with the Customer, have become entitled to immediate possession of the Vehicle.

96. Brookside has refused, and continues to refuse, to surrender possession of the Vehicle to Plaintiffs.

97. By these actions, Brookside has purposefully, knowingly and/or intentionally exercised dominion and control over the Vehicle, wrongfully interfering with Plaintiffs' rights to possession of the Vehicle.

98. Plaintiffs have suffered, and continue to suffer, damages as a result of Brookside's actions.

**WHEREFORE**, Plaintiffs pray for judgment against Defendant Brookside for actual damages, consequential damages, punitive damages, fees and costs of suit, including reasonable attorneys' fees, and such other and further relief as the Court deems just and proper

**COUNT VIII**
**Tortious Interference**
**(as Against Brookside only)**

99. Plaintiffs reallege and incorporate herein by reference to the allegations set forth in the prior paragraphs herein.

100. Brookside wrongful actions as set forth above constitute a knowing and intentional tortious interference with Plaintiffs' contractual relations and/or prospective economic advantage with respect to the Vehicle.

101. Plaintiffs have suffered, and continue to suffer, damages as a result of Brookside actions.

**WHEREFORE**, Plaintiffs pray for judgment against Defendant Brookside for actual damages, consequential damages, punitive damages, fees and costs of suit, including reasonable attorneys' fees, and such other and further relief as the Court deems just and proper

Dated: December 13, 2022

**NORRIS, McLAUGHLIN, PA**
*Attorneys for Plaintiffs*

By: *_/s/ Nicholas Duston_*
Nicholas A. Duston
400 Crossing Blvd. 8th Fl.
Bridgewater, NJ 08807
naduston@norris-law.com
(908)-722-0700

**LOCAL CIV. R. 11.2 CERTIFICATION**

I certify that to the best of my present knowledge, the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

*/s/Nicholas A. Duston*
Nicholas A. Duston, Esq.
**NORRIS McLAUGHLIN, PA**
400 Crossing Blvd. 8th Fl.
Bridgewater, NJ 08807
(908) 722-0700
*Attorneys for Plaintiffs*

Dated: December 13, 2022